The court, on the 2d day of October, 1790, delivered the following decree, wiiich is extracted from chancellor *178 Matliews’s notes, and the register book: — The court said it had considered the subject, and examined the decided cases with great care: That the principal point relied upon by complainants’ counsel was, that Mrs, Beresford had a separate estate under the marriage settlement, which was liable to pay the complainants. Several of the cases cited would have been conclusive, if it could have been shewn that Mrs. Beresford had a separate estate. But the court did not think she had. By the marriage settlement she conveyed the whole estate to trustees, to the use of her husband It. Beresford, during their joint lives; and upon her death, for the use of such person as she should appoint or direct by deed or will. This is un - like any of the cases in the books. She has divested herself of the legal estate, and has- reserved no equitable estate, but that right to a support from the husband, which the law gives every wife. She has no rights in the estate during life; she can only dispose of it to take effect after her death. This then is not such a separate estate, vested ™ ^cr’ as w^l induce a court-of equity to call her a feme sole. All the decided cases are, “ where the wife has a clcai* distinct, independent, separate estate, which has induced the court of equity to consider her a feme sole; and as such has made her contracts obligatory on ]101- — whereas at common law they would have been void. The case quoted from 2d Equity Cases abridged, 136, and Talbot 41, is a good deal like the present, and the court held the wife hound; hut it was because she had joined her husband in- levying a fine, one of the most formal and binding acts of the law; in which she had a fair opportunity to refuse to act. But-in the case under consideration, the signing the bonds is in a private room, under the eye and control of the husband. The chancellor relied upon this public solemn act, and said that a fine has the same operation on trust estates as on legal estates. The case of Hulme & Tenant, 1 Bro, C. C. 16, comes nearest to the case under consi - deration; and the court has gone further in that case in enforcing the contracts of the wife, than in any other. In all the other cases, (except Penn vs. Peacock and wife, *179 in Talbot,) the decree, has never gone further than to hind the rents and profits of the wife’s separate estate to answer for her contracts; but in lluliue and Tenant it is extended to the personal estate, as well as the rents and profits. But still this is on the principle of a sole, separate estate, and the wife is in consequence considered as a feme sole. Could we consider Mrs. Beresford in this light, we should think ourselves hound by such strong authorities: But we have said she is not so to be considered; therefore the cases are not applicable to the preseni one.
That Mrs. Beresford . had not a separate estate, in prassenti, which would constitute her a feme sole — and which she could bind by her contracts: But the whole in-he™6 bpu!f band’s under ment tintáis liable to his vin^'a^rea-sonable al-heT^maiiite-nance.
*179 The counsel have next relied on the case of Baynton and others vs. Ward, in 2 Atk. 172, where it is decided, that a wife having power to dispose by appointment of a reversion in fee, and no disposition is made, it .shall bo assetts to satisfy specialty creditors. And it is contended, Mrs. Beresford had at least a reversionary estate, disposable by appointment, which ought to be made liable. But Mrs. Beresford lias not, strictly speaking, a rever-sionary estate. It would be premature to say vvliat effect would result, from Mrs. Beresford’s dying without exercising her power of appointment; which might assimilate, it to the case above mentioned. If that event occurs, it will he time enough for the court to decide upon the effect.
We will now examine the cases cited for defendants, and the arguments founded on them. The two first arc from 3 Atk. 162, and from 2 P. Wms. 506, with respect to the strict execution of the povvers. And complainants’ counsel has admitted, that any deviation in the execution of the powers under the. deed, would he fatal; were it not that Mrs. Beresford liad a separate estate, and joining in the bond, with the assent of the trustee; evidenced by his witnessing the bond; this enlarged her power. But she had not a separate estate — And the bond is not executed under the povvers of the deed of settlement, which required her appointment to be made in presence of three witnesses. The enlargement of the power the court will look at with a jealous eye, and will not sanction its especially on such presumptive circumstances.
*180 It is said that Cooke’s case stands on stronger ground} ag |-]ie trustee has expressed his assent deliberately, and subscribed as a witness. But in this case the execution °f the power is not correct} there being but one witness, h^tead of three. And it' it had been correctly exercised as to form, it is premature: It is done in the life time of ^le husband, whereas by the settlement her power of appointment is not to be executed during his life, and can only operate after her death. The trustees had no authority to enlarge her power, to charge or encumber the estate. They are to protect the estate and the interests of the cestui que use, and not to assist in injuring or encumbering them. His assent therefore, cannot give eifect to an act otherwise unauthorized and invalid — Such an assent is a breach of trust. But the assent was an act of surprize, as the trustee swears in his answer: And he declares lie did not know the eifect which such subscription as a witness might be construed to have on the trust estate, or he never would have signed the bond as a witness} for he had promised the father of Mrs. Boresford never to sanction any act encumbering the trust estate.
With regard to the complainants, it appears that they were apprized of the settlement, and presuming that Mrs. Beresford had a separate estate under it, and had authority to charge that separate estate, they solicited her to join in the bond. She did so, but she did not mislead them — there was neither suggestio falsi, nor suppressio veri, on her part. It was proved that she promised Be-Ihune that the debt should he paid out of the crop} but there is no evidence that she directly promised to make the trust estate liable: And her declaration to one of the witnesses, who called for payment of the bond, that it was a debt of her contracting, and should be paid, (though she had only written orders on a store for goods, as other married women do,) does not alter the question as to the liability of the trust estate. If it were a debt of Mrs. Beresford’s contracting, and she had a separate estate,liable to it, there was no necessity to join Mr. B. in the bond, and the complainants had no confidence in him. If she was considered as a feme sole, her bond alone was *181 sufficient. If not, her joining in the bond was a void act: Mr. B. was looked upon as the principal, and signed the bond ñrst.
In Cooke’s case reliance is placed on the fact that the bond refers to the settlement, as securing her estate to her, and evidences an intended reference to, and depend-anee on that estate for payment, to which the trustee consented by signing as a witness. But this cannot alter the case. This reference to the settlement cannot make the trust estate liable, if it were not so independently of that circumstance, it conferred no new powers of charging tiie estate on her. No deed can be defeated by a deed of less solemnity. 2 Vern. 473. 5 Com. 595. No subsequent deed can invalidate a prior one, where no power of relocation is given j and none is given by the deed of settlement.
If the creditors relied on this security on a mistaken ground of the powers of Mrs. B. to make the trust estate liable, it is not lor this court to give them relief. The situation of Mrs. B. is not that of a free agent. A wife witnessing the distresses of her husband, would do any act to relieve him. This court is bound to protect her against her own misguided acts, and prevent her ruin. The court cannot consent to make her liable, because the creditors have mistaken her powers and her liability; More especially as the whole settled estate proceeded from her.
Mrs. Beresford never was applied to, to join in bonds, till her husband v7as found to bo incapable of paying. The creditors relied for payment on t he income of the trust estate, which'was at his disposal. But when that was found inadequate to pay his debts, then he is pressed, and he proposes to procure his wife to join in binding her rever-sionary interests — They agree to this proposal, and she is persuaded to do so by her husband. If this corn-t should sanction such an act, it would be a death blow to all marriage settlements.
On a full consideration of this case, “ the court is of opinion, that Mrs. Beresford is not to be considered &s having a separate estate in presentí, under the mar *182 riage settlement; therefore she cannot be considered as a feme sole, whose contracts, such as they are, can be binding on her, they wanting that solemnity, which is required by the express words of the deed of settlement, and which indeed would, by the rules of law, he also required; That her reversionary interest in the estate, is not immediately affected by those bonds she has entered into. However, there can he no doubt that Mr. Beresford’s interest in the estate is liable for liis debts, and must he made answerable for them. At the same time Mrs. Bc-resford must have some allowance made her, for her maintenance, out of the trust estate which flowed originally from her. — It must therefore be referred to'the master to enquire, what arc the whole of the dehts of Mr. Beresford; w hat can be considered as the average value of the profits of the estate annually, and what would be a proper allowance lor Mrs. Beresford out of them, and re - port accordingly.
b. b. p. 261. 2d Oct.
Referred to the master to report a proper allowance for Mrs. Bcresford.
b. b. p. 266.
Allowance to Mrs. B. fixed.
“ As to the case of the executors of Ward vs. Beres-ford and others, we do not see that it differs from the' others just now determined, except that the executors of Ward have a right to foreclose the mortgage.
“ With respect to the case of Saunders vs. Washington and others, we shall defer giving any decree on that' case, till the master’s .report comes in.”
Afterwards, on the master’s report being made, the court made the following decree:
“ Decreed, that Mr. and Mrs. Beresford be allowed the sum of three hundred pounds per annum for her maintenance; the use of the mansion-house at Woodville, and household furniture, with the gardens and out-houses, except such as are necessary for plantation purposes; the following servants, viz. Wall, Doll, Phebe, Affey, Jenny; Mimba; Billy, Johnny, Cupid, Rachael, Gardner, and two boys, and Hunter, also, Sibby, Maria, and Saul, with the usual plantation allowance of provisions for them, the use of the horses, the use of the stock (excepting' the working oxen) for family use; necessary pasture, and as much of the offals of the plantation as may he requisite for their subsistence: And that the entire management of *183 the rest of the estate be committed to colonel William Washington, and colonel William Skirving, and captain Roger Parker Saunders, removable on application to the 00111% who are hereby directed after the payment of the above annuity to Mrs. Beresford, and the plantation expenses, to divide the remaining profits of the estate among the creditors in ecpial share and proportion: that the injunction be perpetual — Provided notwithstanding, that nothing in this decree contained, shall be construed to prejudice or impeach the claims of any persons who may inay have had demands against the said estate previous to the intermarriage of Mi', and Mrs. Beresford: And that costs of these suits be paid out of the proceeds of the estate.”
MARCH. 1791.
Mr. John Rutledge, the senior judge of the court of chancery having been elected by the legislature, chief justice of the court of common pleas and sessions, in the month of February, 1791, and he having accepted that office, Mr. Hugh Rutledge was elected a chancellor in his place — So that the court is now composed of the following judges: Richard Hutson, John Mathews, and Hugh Rutledge.